Filed 4/25/23  In re M.B. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re M.B., a Person Coming Under the Juvenile Court Law. | B321516 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.G.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 20LJJP00267A |

APPEAL from an order of the Superior Court of Los Angeles County, Robin K. Kesler, Juvenile Court Referee. Affirmed.

Jack A. Love, under appointment by the Court of Appeal; Law Offices of Vincent W. Davis & Associates and Vincent W. Davis for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

J.G. (father) appeals from an order of the juvenile dependency court terminating parental rights as to his four-year-old daughter, M.B. (minor). Father is non-offending, has been incarcerated for the minor's entire life, and will not be eligible for parole until late 2024 at the earliest. Although father maintained telephone contact with the minor on a somewhat regular basis during the proceedings below, the minor did not benefit from those interactions. The minor was placed with relatives who have committed to adopt her and the dependency court terminated both parents' parental rights pursuant to Welfare and Institutions Code section 366.26[1] to allow the adoption to proceed.

Father attacks a variety of the court's rulings in the present appeal, most of which are not properly before us because they were decided well before the permanency planning hearing. As to the cognizable issues, father fails to cite the appellate record or provide reasoned legal analysis. He has therefore failed to establish the existence of reversible error. Accordingly, we affirm.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

## FACTS AND PROCEDURAL BACKGROUND[2]

The minor, who is now four years old, first came to the attention of the Department in April 2020 when her mother checked into a domestic violence shelter.[3] The minor was 18 months old at the time. Mother had not yet introduced solid foods and the minor was only consuming formula. The minor was small for her age. Mother exhibited erratic and combative behavior. Mother neglected the minor and appeared to have significant mental health issues. Mother reported that she had obtained a 10-year restraining order against the minor's father, J.G. She did not disclose any additional information about him, however.

The Department filed a petition under section 300, subdivision (b), containing two counts. Count b-1 alleged that mother "demonstrates mental and emotional problems, including Anxiety and erratic and paranoid behaviors, which render the mother incapable of providing regular care and supervision of the child. Such mental and emotional problems on the part of the mother endanger the child's physical health and safety and place the child at risk of serious physical harm, damage and danger." Count b-2 alleged that mother "placed the child in a detrimental and endangering situation by leaving the one year old child alone without adequate adult supervision. The child is of such a young age as to require constant care and supervision. Such a detrimental and endangering situation established for the child

---

[2] The Department's unopposed request for judicial notice of our opinion in father's prior appeal and our docket in father's aborted writ proceeding, filed on January 19, 2023, is granted. (Evid. Code, §§ 452, subd. (d), 459.)

[3] Mother is no longer a party to this appeal.

on the part of the mother endangers the child's physical health and safety and places the child at risk of serious physical harm, damage and danger." In May 2020, the court detained the minor from the parents and ordered her placed in foster care with monitored visitation for mother.

In June 2020, the court ordered the department to conduct a due diligence search to locate father. The court also ordered the Department to evaluate the maternal aunt for possible placement. The Department later determined that father was incarcerated. The court subsequently found that he was the minor's biological father, found him to be non-offending, and ordered him to receive any available services.

In August 2020, the Department filed an amended petition, adding to count b-1 an allegation that father failed to protect the minor. Two new allegations were also added. Count b-3 alleged that both parents "have a history of domestic violence. Additionally, both mother and father have a history of [assaultive] behaviors. Regarding the mother, she has criminal history that includes arrests and conviction of Domestic Violence, Assault, and Battery. Regarding the father, he has criminal history that includes arrests and conviction of Domestic Violence, Assault, Battery, and [Kidnapping.] Furthermore, the father is currently incarcerated for a violent crime. Such violent action on the part of the mother and the father endangers the child's physical health and safety and places the child at risk of serious physical harm, damage and danger." Count b-4 alleged a history of substance abuse by mother.

In September 2020, the court conducted the adjudication hearing and found true the allegations in counts b-1 and b-4 of the amended petition, as modified by interlineation. As to count

b-1, the only sustained allegation relating to father, the court deleted the allegation that father failed to protect the minor from mother's inability to provide regular care due to mental illness.

In October 2020, the Department placed the minor with the maternal aunt, who expressed the desire to adopt the minor. Father generally visited with the minor by telephone for 10 minutes three times a week. He often exhibited a "demanding, aggressive and unpleasant demeanor during the telephone calls [which] created an unpleasant environment for the child."

The court held the dispositional hearing in December 2020, ordered the minor removed from mother, and approved visitation for both parents.[4] Although father regularly called the minor, father repeatedly harassed the maternal aunt during the calls. Father was not in compliance with his case plan at any point and his reunification services were terminated in August 2021 due to the length of his incarceration and inability to timely reunify.

In November 2021, the Department recommended terminating father's visitation with the minor "given the child's negative exposure and her current reactive and aggressive behaviors at school" and set the matter for hearing under section 366.26. In December 2021, the court followed the Department's recommendation and set a permanency planning review hearing in June 2022.[5]

---

[4] Father appealed concerning the court's parentage finding and disposition. We rejected his arguments in an unpublished decision. (*In re M.B.* (Sept. 15, 2021, B309384) [nonpub. opn.].)

[5] Father filed a notice of intent to file a writ petition challenging the order. No petition was ever filed, however.

In the Department's final report in April 2022, the Department reported that the minor remained in the home of the maternal aunt. Although father's telephonic visitation had continued, the minor did not generally participate in the conversations and was very quiet. The Department recommended that the court terminate mother's and father's parental rights to allow the minor to be adopted.

A contested hearing under section 366.26, at which father testified, was held on June 22, 2022. The court terminated both parents' parental rights and found by clear and convincing evidence that the minor was adoptable.

Father timely appeals.

## DISCUSSION

Father purports to challenge numerous rulings by the court in the present appeal. Several of those rulings were made some time ago and are not properly before us. As to the arguments that are cognizable at this stage, father fails to carry his burden, as the appellant, to establish prejudicial error.

### 1. Appellant's Burden on Appeal

"The juvenile court's judgment is presumed to be correct, and it is appellant's burden to affirmatively show error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence,

conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

"An appellant must fairly set forth all the significant facts, not just those beneficial to the appellant. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)" (*In re S.C., supra*, 138 Cal.App.4th at p. 402.) Further, "[w]hen an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made. [Citations.] We can simply deem the contention to lack foundation and, thus, to be forfeited. [Citations.]" (*Id*. at pp. 406–407.)

## 2.     Father fails to establish error by the juvenile court.

Father's brief largely fails to adhere to the rules of appellate practice just summarized. We address each of his contentions in turn.

### 2.1.   Placement with Paternal Grandmother

Father's first argument heading states, "Appellant was the non-offending parent, and the minor should have been placed with the paternal grandmother." The section that follows, however, cites to statutory and legal authority that relates to a child's placement with a previously noncustodial *parent*, not a family member. (See, e.g., § 361.2, subd. (a) [statutory preference for placement with previously noncustodial parent upon a child's removal from custodial parent].) It is undisputed, however, that the minor could not be placed with father because he was incarcerated and will not be eligible for parole until late 2024 at the earliest.

Moreover, and in any event, the Department evaluated the paternal grandmother for possible placement and advised the

court that she could not be approved for placement due to her criminal history, which included a conviction for child abuse under Penal Code section 273a.

### 2.2. Reunification Services

Father also claims the Department failed to provide reasonable reunification services to him and that, as a result, the court erred in setting the matter for a hearing under section 366.26. This challenge is not properly before us. The court's order setting the hearing under section 366.26 is not appealable and must be challenged, if at all, in a petition for extraordinary writ. (§ 366.26, subd. (*l*)(1)(a).) Although father previously filed a notice of intent to file a writ petition, he never did so and his opportunity to challenge the court's ruling has therefore ended.

### 2.3. Visitation

Father asserts that the Department "failed to comply with the court's minimum visitation order." We disagree. The appellate record indicates that the minor was regularly made available for telephonic visitation with father three days a week on a schedule negotiated with father. Although father urges that "the record showed [he] was denied visitation, against court order and case law," he provides no citations to the record to support his claims. For example, father contends "[i]t is likely the visitations were denied, canceled, or made nearly impossible because of the caregiver's goal of impeding family reunification and the parent's progress, which was a documented concern of [the Department,] so that she could adopt the child." He also claims that "[the Department,] the caregivers, and the preschool deliberately interfered with [father's] visits because they

8

terminated and canceled visits without his consent … purposely distracted the child by giving her crayons and toys to play with during the visits … [and] failed to encourage the child to engage in the visits." As father provides no record citations to support these assertions, we pass them without further discussion. (See *In re S.C., supra,* 138 Cal.App.4th at pp. 406–407 [noting absence of record citation to support argument resulted in forfeiture on appeal].)

### 2.4. Placement with Paternal Relatives

As father notes, after a child is removed from parental custody, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." (§ 361.3, subd. (a).) Father asserts that "[the Department] and the Court failed to place the minor with paternal relatives, for no reason other than the social worker choosing not to."

First, the Department adhered to section 361.3 by placing the minor with maternal relatives. Second, the Department's placement decision was made two and a half years ago, in October 2020. The appropriate time to challenge that placement was in response to the court's dispositional order, not in response to an order terminating father's parental rights. Third, and in any event, father fails to support his argument with even a single citation to the record. In particular, father fails to identify any paternal relative who requested custody of the minor. Without that basic information, we are unable to evaluate his contention that the Department refused to consider possible placement with his relatives—with the notable exception of the paternal grandmother who, as we have already explained, was ineligible for placement due to her criminal history.

9

### 2.5. Beneficial Parent-Child Relationship

Finally, father asserts that the court erred in terminating his parental rights because the beneficial parent-child relationship exception to adoption applies.

After a juvenile court terminates a parent's reunification services, " 'the focus [of the proceedings] shifts to the needs of the child for permanency and stability.' " (*In re Celine R.* (2003) 31 Cal.4th 45, 52.) At that point, adoption becomes the preferred permanent plan for the child, and the court should order it "unless exceptional circumstances exist." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 51, disapproved on an unrelated point by *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5 (*Caden C.*).) Indeed, section 366.26 requires the juvenile court to terminate parental rights if it finds by clear and convincing evidence that the child is likely to be adopted. (§ 366.26, subd. (c)(1).)

A parent may avoid termination of parental rights, however, by establishing that a statutory exception exists. (*Caden C., supra,* 11 Cal.5th at p. 617.) One exception exists where there is a beneficial relationship between the parent and the child. (*Ibid.*) To establish the beneficial parent-child relationship exception, the parent must show, by a preponderance of the evidence: (1) regular visitation and contact with the child, taking into account the extent of visitation permitted; (2) the existence of a substantial, positive, emotional attachment between the child and the parent—the kind of attachment implying that the child would benefit from continuing the relationship; and (3) that terminating the parent-child relationship would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home. (*Id.,* at p. 636; § 366.26, subd. (c)(1)(B)(i).) To evaluate

10

whether the exception applies, courts should look to several factors, including the age of the child, the amount of time the child spent in the parent's custody, the quality of interaction between parent and child, and the child's particular needs. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) If the parent establishes all three elements, the exception applies, and the court should select a permanent plan other than adoption. (*Caden C.*, at pp. 636–637.)

The totality of father's argument is this: "In the present case, Appellant maintained regular, meaningful visitation with his child, despite, [the Department], the caregivers, and the preschool deliberately interfer[ing] with [his] visits because they terminated and canceled visits without his consent. In addition, they purposely distracted the child by giving her crayons and toys to play with during the visits. Further, they failed to encourage the child to engage in the visits. Thus, [father] has satisfied the first prong. [¶] The second prong is easily satisfied because [father] has a strong bond with his child and [the Department] found that placement with the child was not in the child's best interest and the caregiver would impede reunification. Thus, as discussed above, the child should have been placed with the non-offending parent's (J.G.) relatives."

Again, father has not cited any portion of the record supporting these contentions and even if they are true, given their cursory nature they are inadequate to establish the existence of a parent-child bond so important to the minor that her adoption would be more harmful than beneficial. In any case, our review of the record indicates that father's extremely limited contact with the minor did little to form a bond between them. Indeed, the record indicates that the phone calls between father

11

and the minor caused her significant distress both during and after the calls.

## DISPOSITION

The order terminating parental rights is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, Acting P. J.

WE CONCUR:


EGERTON, J.


NGUYEN, (KIM) J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.